## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-CV-60288-DAMIAN/STRAUSS

**WEBBY SAINTCY,**

      Plaintiff,

v.

**SHARLEEN ROSTANT**,
*in an individual and official capacity***,** *et al.,*

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER came before the Court upon Defendants'[1] Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). [DE 32]. This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 20]. I have reviewed the Motion, the Response [DE 35] and Reply [DE 36] thereto, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED**.

---

[1] Sharleen Rostant, Debbie Frank, Margarita Ruiz, and Ann Coffin are all named in the First Amended Complaint as Defendants in their individual and official capacities and are collectively referred to herein as "Defendants." The Motion was purportedly also filed on behalf of the Florida Department of Revenue Child Support Program, who was named as a defendant in Plaintiff's initial complaint, but not in his First Amended Complaint.

## BACKGROUND[2]

Plaintiff, Webby Saintcy ("Saintcy"), brings this lawsuit, *pro se*, against Defendants under 42 U.S.C. § 1983 and the laws of Florida.[3]  In January 2023, Saintcy "received a letter from Florida Department of Revenue stating a case has been opened for child support."  [DE 27] ¶ 10.  On March 10, 2023, Florida Department of Revenue ("FDOR") sent Saintcy an "Order to Appear for Genetic Testing," which an individual at Saintcy's residence received and signed for on March 16, 2023.  *Id.* ¶ 11.  Director of Child Support, Ann Coffin ("Coffin"), electronically signed the order. *Id.*  Attached to the Order to Appear for Genetic Testing was a paternity declaration, signed by the child's mother, Trellany Baxter ("Baxter"), alleging that Saintcy is the father of her child.  *Id.*; [DE 27–1] at 4.[4]

The Order to Appear for Genetic Testing warned that failing to appear could result in proceedings to suspend Saintcy's driver's license or imposition of a $500 administrative fine.  [DE 27–1] at 3.  Saintcy consequently appeared for the genetic testing.  [DE 27] ¶ 13.  Before performing the genetic testing, a child support agent informed Saintcy that they needed his social

---

[2] For purposes of considering the Motion, the Court accepts the factual allegations in the First Amended Complaint as true and views them in the light most favorable to Plaintiff.  *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019).

[3] "'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed."  *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).  However, liberal construction does not mean that the Court can "act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action."  *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

[4] "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."  *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

security number and driver's license to verify his identity before the testing could occur. *Id.* ¶15. Saintcy received the results of the genetic test on May 3, 2023, stating that he was the child's biological father. *Id.* ¶ 16. At this time, Saintcy is not listed on the child's birth certificate. *Id.* ¶ 17. Nor has Baxter signed a "Voluntary Acknowledgement of Paternity" after the results of the genetic test established Saintcy's paternity. *Id.*

On June 7, 2023, Saintcy received a "Proposed Final Order" which was signed by Revenue Specialist Debbie Frank ("Frank"). *Id.* ¶ 18. Saintcy later received a "Final Administrative Paternity and Support Order" dated on July 6, 2023. *Id.* ¶ 19. Defendant Coffin electronically signed this order, and it was filed within the Florida courts' system along with an "Income Deduction Order." *Id.* ¶¶ 19–20. Shortly thereafter, Saintcy's employer was served with an "Income Withholding Form/Order" that did not contain a judicial signature or name. *Id.* ¶ 21. On July 26, 2023, Saintcy's wages were subject to garnishment. *Id.* ¶ 22. Two weeks later, "Defendants"[5] issued an order to the Department of State to revoke Saintcy's passport privileges due to non-payment of child support. *Id.* ¶ 23.

On May 9, 2024, Saintcy filed his First Amended Complaint ("FAC") against Defendants in their individual and official capacities. The FAC contains seven separate counts, each purportedly against all Defendants and without distinction as to whether Saintcy is alleging individual or official capacity claims. *See id.* Based on the allegations and how Saintcy has styled each count, the FAC alleges the following causes of action:[6]

---

[5] Saintcy uses the word "Defendants," but it is impossible that all four Defendants issued the order. Instead, it appears Saintcy is referring to FDOR who issued the order.

[6] Although Defendants do not raise it among their arguments for dismissal, the FAC is, in many respects, a "shotgun pleading."

- **Count 1** alleges a claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment. It appears to be based on the issuance of the Order to Appear for Genetic Testing, which Saintcy alleges was issued without probable cause. [DE 27] ¶¶ 24–26.

- **Count 2** alleges a § 1983 claim for violation of the Fourteenth Amendment. It also appears to be based on the issuance of the Order to Appear for Genetic Testing, alleging that such testing amounted to "excessive force." *Id.* ¶¶ 27–31.

- **Count 3** is styled as a § 1983 claim. While it purports to be "Against All Defendants," it is also titled "Government Entity Liability" and alleges that the Department of Revenue is "liable for violating Plaintiff'[s] constitutional rights" by employing the Defendants and because of its "Official Policy and custom." *Id.* ¶¶

---

A shotgun complaint is one that, for example: (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Embree v. Wyndham Worldwide Corp.*, 779 Fed. App'x 658, 662 (11th Cir. 2019) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015)). The FAC clearly falls within the first category (re-alleging all preceding counts in subsequent counts) and fourth category (asserting claims against multiple defendants while failing to specify who is responsible for what) and arguably falls within the second category (replete with conclusory or vague allegations). As such, the FAC "imposes a heavy burden on the trial court, for it must sift each count for the allegations that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts." *Id.* (quoting *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006)). These pleading deficiencies alone may be grounds for dismissing the FAC, especially in light of the fact that Saintcy has already had one opportunity to amend his complaint. *Id.* Given that Defendant has not argued for dismissal based on the FAC being a shotgun pleading (and given the other bases for dismissal described herein), I do not recommend that the Court dismiss the FAC on that basis alone. However, I note that the shotgun nature of the pleading makes it difficult to discern the exact basis of each count.

32–34.  It does not specify what constitutional rights were allegedly violated and by what actions.

- **Count 4** is styled as a § 1983 claim.  While it also purports to be "Against All Defendants," it is titled "Government Entity Liability for failure to train or supervise."  Its sole allegation is that the Department of Revenue is liable for failing to adequately "train/supervise" its officers, which caused Defendants to violate Saintcy's Fourth and Fourteenth Amendment rights.  *Id*. ¶ 35.

- **Count 5** is styled as a § 1983 claim for "Supervisor's Liability."  While it purports to be "Against All Defendants," its allegations pertain to Saintcy's contention that Defendant Sharleen Rostant ("Rostant"), the Supervisor of Child Support, did not provide him with certain documents about his child support case.  *Id.* ¶¶ 36–37.

- **Count 6** brings a claim for "Wrongful Garnishment" against all Defendants, alleging that Defendants wrongfully issued a garnishment order and issued an order to the Department of State to have his passport privileges revoked for nonpayment of child support.  *Id.* ¶¶ 38–40.  It is unclear whether he brings this claim under state common law[7] or under § 1983.  Unlike Counts 1–5, he does not refer to § 1983.  However, he does refer to Defendants' actions in issuing the order to the Department of State as violating his rights to due process.  [DE 27] ¶ 40.

- **Count 7** alleges a tort of Intentional Infliction of Emotional Distress alleging that Defendants' conduct (presumably, ordering him to appear for genetic testing and

---

[7] *See Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 805 So. 2d 835, 844–45 (Fla. 4th DCA 2001) (discussing the elements of the tort of wrongful garnishment).

garnishing his wages) was extreme and outrageous and caused Saintcy severe emotional distress. *Id.* ¶¶ 41–46.

Saintcy seeks compensatory damages and punitive damages as well as an injunction directing the Defendants to withdraw the Income Deduction Order and an injunction against the Defendants prohibiting them from taking "similar illegal action against the Plaintiff in the future." *Id.* ¶ 48.

## ANALYSIS

Defendants move to dismiss Saintcy's FAC on a myriad of grounds. Because I agree with Defendants that this Court lacks subject matter jurisdiction on Saintcy's claims brought against Defendants in their official capacities, a further analysis on Defendants' other grounds of dismissal for those claims is not necessary. To the extent Saintcy brings claims against Defendants in their individual capacities, Saintcy has failed to state a claim upon which the Court could grant relief.

### I.      Lack of Subject Matter Jurisdiction

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A party may bring a factual attack against subject matter jurisdiction which challenges "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529)).

Under a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). There is no presumption of truthfulness to the plaintiff's or counter-plaintiff's allegations, "and the existence of disputed material facts will not

preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Williamson*, 645 F.2d at 413).

### A.  Eleventh Amendment

Eleventh Amendment sovereign immunity bars Saintcy's claims against Defendants in their official capacities.  The Eleventh Amendment bars "suits against a state initiated by that state's own citizens." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). This immunity extends to state agencies and other arms of the state. *Cassady v. Hall*, 892 F.3d 1150, 1153 (11th Cir. 2018).  Although "a state can consent to suit in federal court . . . .[,] Florida has not waived its sovereign immunity with regard to § 1983 actions." *Cichowski v. Totten*, No. 24-10195, 2024 WL 2182487, at *2 (11th Cir. May 15, 2024) (citation omitted).  Florida has also explicitly declined to consent to suit for tort actions (like those alleged in Counts 6[8] and 7) in federal court.  § 768.28(18), Fla. Stat. (2023).  Nor has Congress abrogated "the states' Eleventh Amendment immunity from § 1983 suits." *Chickowski*, 2024 WL 2182487, at *2.

The Eleventh Amendment similarly "prohibits suits against state officials where the state is, in fact, the real party in interest." *Summit Med. Assocs.*, 180 F.3d at 1336.  When a plaintiff sues an individual in their official capacity, "the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017).  On the other hand, personal-capacity suits "seek to impose *individual* liability upon a government officer for actions taken under color of state law." *Id.* (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  Consequently, the real party in interest is the individual, not the sovereign. *Id.* at 163.  When evaluating who the real party in interest is, "courts may not simply

---

[8] Again, it is unclear whether Count 6 is alleging a violation of 42 U.S.C. § 1983 or a state common law tort.  Either way, insofar as it is seeking damages against the Defendants in their official capacities, the Eleventh Amendment bars the claim.

rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Lewis*, 581 U.S. at 162.

Here, Saintcy purports to sue Defendants in both their official and individual capacities. *See* [DE 27] at 3. As to the official capacity claims, because the real party in interest is FDOR, which is an arm of the state, it is entitled to sovereign immunity under the Eleventh Amendment. *See N. Ins. Co. of New York v. Chatham Cnty., Ga.*, 547 U.S. 189, 193 (2006) ("States and arms of the State possess immunity from suits authorized by federal law."); *see also Brown v. Fla. Dep't of Revenue Off. of Child Support Enf't*, 697 F. App'x 692, 693 (11th Cir. 2017) ("[A]s a state agency, [FDOR] is immune from suit under the Eleventh Amendment."). Florida has not waived its sovereign immunity for § 1983 suits seeking monetary damages. *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986); *see also Walker v. Coffin*, No. 3:20-CV-826-J-32PDB, 2020 WL 6276168, at *3 (M.D. Fla. Sept. 15, 2020), *report and recommendation adopted*, 2020 WL 6273812 (M.D. Fla. Oct. 26, 2020) ("The Florida Department of Revenue, sued through Director Coffin in her official capacity, is entitled to sovereign immunity . . . ."). Nor, as noted above, has it waived sovereign immunity for tort suits in federal court. § 768.28(18), Fla. Stat.[9]

---

[9] Beyond the Eleventh Amendment's prohibition on pursuing his claims in federal court, sovereign immunity more generally bars Saintcy's intentional infliction of emotional distress claim. To prevail on a claim for intentional infliction of emotional distress under Florida law, "the plaintiff must prove: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990). "[B]ecause a claim for intentional infliction of emotional distress requires either intent or reckless conduct, which has been deemed equivalent to 'willful and wanton conduct' as described in Florida Statute § 768.28(9)(a), this type of claim is barred by sovereign immunity." *Anderson v. City of Groveland*, No. 5:15-CV-26-OC-30PRL, 2015 WL 6704516, at *8 (M.D. Fla. Nov. 2, 2015); *Perez v. City of Miami*, No. 10-21179-CIV, 2011 WL 772858, at *2 (S.D. Fla. Feb. 28, 2011) (same); *see also Williams v. City of Minneola*, 619 So. 2d 983, 986–87 (Fla. 5th DCA 1993) (finding that "Florida courts have equated reckless conduct with willful or wanton conduct" when evaluating intentional infliction of emotional distress claims for which Florida has not waived sovereign immunity). To the extent that Count 6's "wrongful garnishment" claim is brought under state tort law, the State of Florida

Consequently, Saintcy's claims against Defendants in their official capacities should generally be dismissed.

There is an exception to Eleventh Amendment sovereign immunity when a plaintiff brings a suit seeking "prospective equitable relief to end ongoing and continuing violations of federal law." *Summit Med. Assocs.*, 180 F.3d at 1336. This is known as the *Ex parte Young* doctrine. But the doctrine does not include or permit judgments against state officers that declare that the state officers violated federal law in the past or permit a plaintiff to adjudicate the legality of past conduct. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Saintcy does seek equitable relief in three forms: (1) a declaration that "Defendants' act" (sic) violated Plaintiff's constitutional rights; (2) an injunction directing Defendants "to withdraw the wrongful and illegal order garnishing/attachment of plaintiff's income"; and (3) an injunction prohibiting Defendants from taking "any similar illegal action against the Plaintiff in the future." [DE 27] ¶ 48(a)–(b), (f). The *Ex parte Young* exception clearly does not apply to the first and third forms of relief and likely does not apply to the second.

First, Saintcy's sought declaration that "Defendants' act" violated his constitutional rights does not seek prospective relief to "end ongoing and continuing" violations of federal law. It is not entirely clear which "act" Saintcy is referring to or which cause of action he believes would entitle him to this relief. To the extent he seeks to declare the issuance of the Order for Genetic Testing, and that order's requirement that he submit to genetic testing, to be a violation of his Fourth or Fourteenth Amendment rights (the basis of Counts 1 and 2), he is clearly seeking to adjudicate past conduct that has been completed, rather than addressing ongoing, continuing, or

---

has also specifically maintained sovereign immunity for such claims against the Department of Revenue. *See Brown v. Coffin*, No. 8:24-CV-00385-WFJ-NHA, 2024 WL 2304372, at *1, 4–5 (M.D. Fla. May 6, 2024), *report and recommendation adopted*, 2024 WL 2293039 (M.D. Fla. May 21, 2024); § 409.2564(6), Fla. Stat. (2023).

threatened future conduct, and therefore does not fall within the ambit of *Ex parte Young*. *See Summit Med. Assocs.*, 180 F.3d at 1337 (citing *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986)). FDOR is no longer compelling Saintcy to appear for genetic testing, nor is there any indication that they will do so again. Insofar as he seeks a declaration that Defendants' issuing and serving the Income Deduction Order violated his rights to due process (an idea to which he alludes to in his general allegations but that does not fit squarely within any of the specific counts in the FAC), he is also seeking to adjudicate past, rather than ongoing and continuing, conduct. *See Locke v. Canady*, No. 22-13971, 2024 WL 64089, at *2 (11th Cir. Jan. 5, 2024) (finding alleged denial of due process rights during disciplinary proceedings ended with issuance of challenged suspension order).

Second, Saintcy's proposed injunction prohibiting Defendants from taking "any similar illegal action against the Plaintiff in the future," while forward-looking, does not address an "ongoing and continuous" violation. Rather, it seems to imply the possibility that Defendants could take some separate, similar action in the future. Putting aside that Saintcy's allegations do not plausibly suggest that such "similar actions" are likely,[10] this proposed injunction does not address a violation that is "ongoing" or "continuous," and thus does not fall within *Ex parte Young*.

The only form of equitable relief Saintcy seeks that arguably addresses "ongoing and continuous" conduct is his proposed injunction directing Defendants "to withdraw the wrongful and illegal order garnishing/attachment of plaintiff's income," insofar as the Income Deduction

---

[10] To be sure, to fall within the ambit of *Ex parte Young*, a plaintiff need not show that unconstitutional action is "imminent." *See Summit Med. Assocs.*, 180 F.3d at 1338. But Saintcy's allegations here do not suggest that whatever he considers "similar actions" by Defendants are more than hypothetical.

Order continues to deprive him of earnings.  However, there are a couple of problems with Saintcy's attempt to seek this relief.

First, while Saintcy's general allegations allude to the Income Deduction Order depriving him of due process (apparently because it "lacked judicial signature" and/or was "without adequate reasoning"), [DE 27] ¶ 22],[11] the only specific count that is arguably based on the Income Deduction Order and the garnishment of Saintcy's wages is Count 6.  But, as discussed above, it appears that Count 6 claims a violation of state common law for "Wrongful Garnishment."  Yet, *Ex parte Young* only applies to ongoing and continuous violations of *federal* law.  *See Brown*, 2024 WL 2304372, at *1, 4–5 (finding that plaintiff sought prospective injunctive relief from FDOR's garnishing of his wages but did not allege any violation of federal law).  So, to the extent Saintcy's claim for injunctive relief against the order garnishing his wages is based on state law, it does not fall within *Ex parte Young*'s exception, and the Defendants are entitled to immunity.

Second, insofar as this count is attempting to allege a violation of federal law predicated on constitutional violations, it is hardly specific enough in explaining how Saintcy's rights have been violated to put Defendants on sufficient notice of what the alleged wrongdoing is.  Finally, even if Saintcy's sought injunction against the garnishment of his wages is based on an ongoing violation of federal law, his claim is barred by the *Rooker-Feldman* doctrine, as discussed below.

B.  *Rooker-Feldman* Doctrine

To the extent Saintcy seeks injunctive relief against ongoing enforcement of the Income Deduction Order (or the Final Administrative Paternity and Support Order) the *Rooker-Feldman* doctrine bars his claim.  Under this doctrine, "federal district courts lack jurisdiction to adjudicate

---

[11] Notably, even this allegation alleges that it was "Support Magistrate" that "acted under color of law and deprived Saintcy of his constitutional rights."  The FAC does not identify who "Support Magistrate" is.  It certainly does not tie "Support Magistrate" to any of the named Defendants.

the validity of a state court order." *Thurman v. Jud. Correction Servs., Inc.*, 760 F. App'x 733, 736 (11th Cir. 2019). The *Rooker-Feldman* doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In such cases, the district court lacks subject matter jurisdiction because 28 U.S.C. § 1257 vests authority to review a state court's judgment solely with the Supreme Court. *Id.* at 291–92.

*Rooker-Feldman* does not strip a district court of subject matter jurisdiction over a claim "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. But, *Rooker-Feldman* prioritizes form over substance and bars all appeals of state court judgments, brought in federal district court, regardless of how a plaintiff labels his complaint. *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021); *see also May v. Morgan Cnty. Georgia*, 878 F.3d 1001, 1005 (11th Cir. 2017) ("[A] state court loser cannot avoid *Rooker-Feldman's* bar by cleverly cloaking her pleadings in the cloth of a different claim.").

The Eleventh Circuit has recently warned that the *Rooker-Feldman* doctrine is limited, clearly narrow, and "will almost never apply." *Behr*, 8 F.4th at 1211–12. Despite this warning, Defendants argue that all seven of Saintcy's claims should be dismissed under the doctrine. While I disagree that *Rooker-Feldman* permits this Court, in one broad stroke, to dismiss all of Saintcy's claims, the doctrine does apply to whichever of Saintcy's claims seek to invalidate the Paternity Order and Income Deduction Order as well as the claims that seek an injunction "to withdraw the wrongful and illegal order of garnishing/attachment of [P]laintiff's income." [DE 27] ¶ 48(b).

In *Behr*, the Eleventh Circuit reviewed a district court's decision to dismiss the *pro se* plaintiffs' complaint, alleging numerous federal and state-law claims, in its entirety under *Rooker-*

*Feldman*.  *See Behr*, 8 F.4th at 1208–09.  The plaintiffs brought their case after "a difficult series of child custody interventions and state proceedings."  *Id.*  On appeal, the plaintiffs identified three federal claims that they believed the district court should not have dismissed.  *Id.* at 1212.  The Eleventh Circuit noted that the plaintiffs' claim-by-claim approach was correct because when reviewing if *Rooker-Feldman* applies, "[t]he question isn't whether the whole complaint seems to challenge a previous state court judgment, but whether resolution of each individual claim requires review and rejection of a state court judgment."  *Id.* at 1213.

The plaintiffs claimed that their due process rights were violated through "the restriction of access to the courts and denial of adequate legal counsel."  *Id.*  However, the plaintiffs clarified during oral argument that they did not raise those constitutional claims to undo or reverse the child custody proceedings.  *Id.*  Instead, they only sought money damages for the alleged constitutional violations.  *Id.*  This distinction was crucial as it took plaintiffs' claims outside the scope of *Rooker-Feldman*.  *Id.*  The Eleventh Circuit did note, however, that other "preclusion and abstention doctrines remain alive and well, and in 'parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment.'"  *Id.* at 1214 (quoting *Exxon Mobil*, 544 U.S. at 293).  Nevertheless, the *Behr* court did not address those other doctrines because the district court dismissed the plaintiffs' claims solely on *Rooker-Feldman*.

In this instance, only the claims through which Saintcy seeks an injunction requiring withdrawal or invalidation of the Income Deduction Order should be dismissed under *Rooker-Feldman*.[12]  Saintcy seeks an injunction directing FDOR "to withdraw the wrongful and illegal

---

[12] For the remaining claims and remedies, *Rooker-Feldman* does not apply.  Those claims are obviously related to the underlying child support case.  However, to the extent Saintcy is seeking monetary damages for alleged violations of his constitutional rights, he is not seeking to undo the state court judgment.  Instead, like the plaintiffs in *Behr*, Saintcy is only asking the Court to consider whether his constitutional rights were violated during the child support proceedings and

order of garnishing/attachment of [P]laintiff's income." *Id.* ¶ 48(b).  Distilled to its essence, that request is inviting this Court to review and invalidate a state court judgment rendered before these current proceedings commenced.  *Rooker-Feldman* prohibits such a review.

Saintcy alleges that *Rooker-Feldman* does not apply because there is no state court case.  *See* [DE 35] at 4.  The Income Deduction Order (and the Final Administrative Paternity and Support Order), however, have the same effect as a state court order.  *See* § 409.2563(11), Fla. Stat. ("An administrative support order rendered under this section has the same force and effect as a court order . . . ."); *see also Dep't of Revenue ex rel. Gauthier v. Hoover*, 40 So. 3d 99, 101 (Fla. 5th DCA 2010).  While *Rooker-Feldman* does not necessarily apply to state administrative decisions, *Narey v. Dean*, 32 F.3d 1521, 1525 (11th Cir. 1994), a crucial question courts must answer is whether the proceedings where "judicial in nature," *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).  Proceedings are judicial in nature when they involve a "'judicial inquiry' in which the court was called upon to investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist.'"  *Id.* at 479 (alteration in original) (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908)).

Here, the state administrative proceedings were judicial in nature.  Baxter filed a sworn statement asserting that she had sexual relations with Saintcy, and he was the possible biological father of her child.  [DE 27–1] at 4.  FDOR then had to investigate if Baxter's claims were true.  To do so, FDOR ordered Saintcy to appear for genetic testing (an order which Saintcy had the opportunity to contest).  *See id.* at 2–3.  The results of that testing confirmed that he was the

---

whether he is entitled to monetary damages for those violations.  *See* [DE 27] ¶ 48(c)–(e). Similarly, *Rooker-Feldman* would not bar his claim for damages for alleged intentional infliction of emotional distress.  Rather, as discussed elsewhere in this Report, the remaining claims should be dismissed for other reasons.

biological father of Baxter's child and therefore had a legal duty to provide child support. *See id.* at 2–3, 6; *Dep't of Revenue v. Jackson*, 846 So. 2d 486, 492 (Fla. 2003).

Based on those results, FDOR issued a Proposed Administrative Paternity and Support Order, which Saintcy had an opportunity to contest. *See* [DE 27–1] at 7. FDOR then issued a Final Administrative Paternity and Support Order, which notified Saintcy of his right to appeal and seek judicial review. [DE 32–1] at 6;[13] *see also Hoover*, 40 So. 3d at 101–02 (detailing right to judicial review of administrative support orders). FDOR, through its enforcement powers, also issued the Income Reduction Order to enforce its child support order (which was subject to the same opportunity for judicial review). [DE 27–1] at 9; [DE 32–1] at 6; § 120.68, Fla. Stat. (2023). Thus, when viewed as a whole, and coupled with the fact that Florida has decreed that an FDOR administrative support order has the same force and effect as a court order, FDOR's proceedings against Saintcy were judicial in nature rather than administrative or ministerial.

Because the proceedings were judicial in nature, the *Rooker-Feldman* doctrine applies, and this Court lacks subject matter jurisdiction to issue an injunction ordering FDOR to withdraw its Income Deduction Order. Moreover, *Rooker-Feldman* applies even to the extent that Saintcy is alleging that the process leading to the Paternity Order and the Income Deduction Orders violated his procedural due process rights. *See Behr*, 8 F.4th at 1213 ("[T]hey are not raising these due process claims so that we can 'review and reject' the state court's child custody judgment. *That*

---

[13] The Court may consider exhibits to a motion to dismiss as part of a complaint if they are central to the complaint and their authenticity is not disputed. *See Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020); *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997). Saintcy has not objected to the use of the exhibits, and they are undoubtably central to the FAC because Saintcy's alleged violations stem largely from the Final Administrative Paternity and Support Order, and Saintcy references the order in the FAC. *See* [DE 27] ¶ 19; *Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1315–16 (S.D. Fla. 2016).

would be a violation of *Rooker-Feldman*.").  Therefore, even if a portion of Saintcy's claims against Defendants in their official capacities could escape dismissal under the Eleventh Amendment, the Court lacks jurisdiction under the *Rooker-Feldman* doctrine.

## II.    Failure to State a Claim

Saintcy's claims against Defendants in their individual capacities should be dismissed as well because Saintcy has failed to state a claim upon which relief could be granted.  At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face."  *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019).  But "[c]onclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Saintcy's FAC fails to allege sufficient facts from which the Court can plausibly infer that Defendants, in their individual capacities, performed an actionable wrong and violated Saintcy's constitutional rights. Though Saintcy proffers several allegations in support of his claims, they do not establish the necessary elements required to maintain his claims against Defendants in their individual capacities.

A. Defendant Ruiz

As a preliminary matter, Saintcy fails to make any sort of allegation against Margarita Ruiz ("Ruiz"). Other than listing her name in the caption of the FAC and identifying her in paragraph nine under the "parties" section, Saintcy does not allege any facts pertaining to Ruiz. Therefore, any purported claim against Ruiz in her individual capacity should be dismissed for failure to assert any allegations against her that could establish a viable cause of action.

B. Count 1

Again, Count 1 alleges Defendants violated Saintcy's Fourth Amendment right to free unreasonable search and seizure by ordering Saintcy to submit for genetic testing without "reasonable cause" or "without a judicial order and without substantial probable cause." [DE 27] ¶¶ 25–26. "To prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived [the plaintiff] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *Arrington v. Cobb County*, 139 F.3d

865, 872 (11th Cir. 1998).  Such a claim necessarily fails if probable cause exists for the seizure.  *See Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022).

While Count 1 purports to be against "All Defendants," there are no allegations in the Amended Complaint associating Defendants Frank and Rostant with the Order to Appear for Genetic Testing.  Rather, Saintcy alleges that Defendant Coffin signed the Order to Appear for Genetic Testing.  [DE 27] ¶ 11.  Thus, Count 1 clearly fails to state any claim against Defendants Frank and Rostant.

As for the claim against Defendant Coffin, it also fails.  Saintcy makes the conclusory allegation that Coffin lacked "reasonable cause" to issue an order directing Saintcy to appear for genetic testing.  *Id.* ¶ 25.  Yet, Saintcy's own exhibit, attached to the FAC, demonstrates that Baxter signed a sworn paternity declaration that she had "sexual intercourse with" Saintcy and she believed that he was the biological father of the child.  [DE 27–1].  Saintcy fails to explain, either in the FAC or in his response to the Motion, why this declaration is insufficient to provide the reasonable cause for the Order to Appear for Genetic Testing.  Indeed, as Defendants argue, Florida law authorizes Coffin's department to "commence a paternity proceeding or a paternity and child support proceeding," including issuing an order for genetic testing, based on such a declaration.  § 409.256(2)(a)(5), Fla. Stat. (2023); § 742.12(2), Fla. Stat. (2023).

Even to the extent Saintcy takes issue with whether the facts in the declaration that supported the Order to Appear for Genetic Testing were sufficient to establish the requisite reasonable cause, Defendant Coffin is entitled to qualified immunity.  Public officials sued in their individual capacity are entitled to qualified immunity when acting in the scope of their discretionary authority unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known."  *Jones v. Fransen*, 857 F.3d 843, 851

(11th Cir. 2017) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)).  Officers act within the scope of their discretionary authority when their actions "(1) [are] undertaken pursuant to the performance of [their] duties, and (2) [are] within the scope of [their] authority." *Id.* (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

Here, it is clear even from Saintcy's allegations that Defendant Coffin was acting within the scope of her discretionary authority.  As to whether Defendant Coffin violated clearly established constitutional rights, to be entitled to qualified immunity against an unlawful seizure claim, the defendant would need to show only "arguable probable cause" for the seizure.  *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023).  And probable cause is viewed from the point of view of a reasonable officer.  *Id.*  Given the declaration from Baxter that Saintcy's own allegations admit Defendant Coffin had in support of the Order to Appear for Genetic Testing, it is clear that she had at least "arguable" probable cause to issue the order.  Indeed, Saintcy's response to the Motion fails to argue otherwise in any meaningful way.  Therefore, Count 1 should be dismissed.

C.  Count 2

Count 2 alleges a violation of Saintcy's Fourteenth Amendment rights by alleging that the ordered genetic testing amounted to "excessive or unreasonable force."  Again, he fails to sufficiently state a claim.  There are no allegations in the FAC associating Defendants Frank and Rostant with the Order to Appear for Genetic Testing, so there is clearly no plausible claim against them in Count 2.

As to Defendant Coffin, Count 2 fails for many of the same reasons as Count 1.  There are two types of excessive force claims, artificial and genuine.  An artificial claim of excessive force is when a plaintiff alleges "that an officer's use of force is excessive only because an arrest was not supported by probable cause."  *Richmond*, 47 F.4th at 1180.  On the other hand, a genuine

claim of excessive force "is a claim that—irrespective of an officer's probable cause to make an arrest—the officer used excessive force." *Id.* The Eleventh Circuit has consistently held that an artificial claim of excessive force "is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000); *see also Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1331 (11th Cir. 2006); *Richmond*, 47 F.4th at 1180–81.

Here, Saintcy makes no allegations about the type of force or actions used in connection with the Order to Appear for Genetic Testing (even assuming any such allegations about its execution could be attributable back to Defendant Coffin). Thus, it is clear that – at best – Saintcy's excessive force claim is an "artificial claim" subsumed into his claim in Count 1 that testing (and the order mandating it) amounted to an unlawful seizure regardless of the amount of force used. Therefore, Count 2 should be dismissed for the same reasons as Count 1.

D. Counts 3 and 4

Counts 3 and 4 should be dismissed for several reasons. Count 3 alleges that "the Department of Revenue which employed the Defendants is liable for violating Plaintiff'[s] constitutional rights" and that the Department's "Official policy and custom" directly caused and was the moving force behind Saintcy's injuries. Count 4 alleges that the Department of Revenue is liable for "failing to adequately train/supervise its officers." First, despite being purportedly brought "Against All Defendants," it is clear that these counts are alleged solely against the Department of Revenue and not against any of the Defendants in their individual capacities. As such, the Court lacks jurisdiction for the reasons stated above. Second, the references to "official policy and custom" and "failure to train" appear to be attempts to state *Monell*[14] claims. However,

---

[14] *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692 (1978).

*Monell* applies to suits against municipalities.  Third, the allegations are wholly conclusory.
Saintcy's allegations fail to allege with any specificity to what "official policy" or "custom" he
refers.  And he fails to make any specific allegations about what training did or did not occur.
Therefore, Counts 3 and 4 must be dismissed.

E.  Count 5

Count 5 purports to bring a § 1983 claim against "all Defendants" on the basis of
"supervisor's liability."  Yet it contains only allegations against Defendant Rostant (and there are
no allegations elsewhere about what supervisory authority any of the other Defendants exercised
over anyone else).  Therefore, Count 5 clearly does not state a claim against Defendants Frank or
Coffin.

As for the allegations against Rostant, they fail to plausibly allege any constitutional
violation (whether for her own actions or over anyone she supervised).  Saintcy only alleges that
Rostant could not answer his questions or provide him "with a copy of summons, complaint, proof
of service, or default judgment."  [DE 27] ¶ 37.  It is wholly unclear from these allegations what
constitutional rights Saintcy claims Rostant violated much less how these bare-bones allegations
could establish such a violation.  Thus, Saintcy has failed to state a § 1983 claim against Rostant.

F.  Count 6

Though Saintcy alleges that Count 6, "Wrongful Garnishment," is against all Defendants,
it is unclear to which Defendants it is directed; indeed, it appears that Saintcy may only be alleging
this claim against FDOR.  *See id.* ¶ 39 ("*Defendant* wrongfully attach[ed] Plaintiff's Income.")
(emphasis added).  Regardless, Saintcy fails to plead any allegations against Defendants in their
individual capacities for this claim.  Instead, Saintcy proffers two conclusorily allegations: that
"Defendant" wrongfully garnished his income and that Defendants issued an order to the

Department of State to revoke Saintcy's passport for non-payment of child support. *Id.* ¶¶ 39–40. Neither allegation establishes a cognizable claim against Defendants in their individual capacity.

As described earlier, it is unclear whether Saintcy is making a state law claim for "wrongful garnishment" or a federal § 1983 claim (given that he does not mention § 1983 in this count and his reference to "due process" appears only in the allegation regarding his passport privileges). Two of the necessary elements for a common law wrongful garnishment claim, which is akin to a wrongful prosecution claim, are "(1) an absence of probable cause for such proceeding, and (2) the presence of legal malice, which 'may be inferred entirely from a lack of probable cause.'" *Burshan*, 805 So.2d at 844–45 (quoting *Adams v. Whitfield*, 290 So. 2d 49, 51 (Fla.1974)). Saintcy's barebones allegations fail to plausibly allege either of these elements (particularly once, as Saintcy's allegations concede, the results of the genetic testing concluded he was the biological father of Baxter's child). Moreover, to the extent Saintcy intended this claim to be a § 1983 claim for a violation of due process, it is wholly unclear how the Defendants' actions deprived him of due process. Therefore, Count 6 should be dismissed.

G. Count 7

Finally, Count 7 should be dismissed. Again, it is completely unclear which, if any, of the individual Defendants Saintcy is referring to in Count 7. Regardless, the allegations in Count 7 amount to nothing more than threadbare recitals of the elements for a claim of Intentional Infliction of Emotional Distress ("IIED").

> To state a valid claim for intentional infliction of emotional distress under Florida law, a plaintiff must plausibly allege the following elements: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."

*Plowright v. Miami Dade County*, 102 F.4th 1358, 1367–68 (11th Cir. 2024) (quoting *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015)).  The tort applies "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* at 1368 (quoting *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)).  Here, Saintcy does not explain how Defendants' actions were "extreme and outrageous," nor supply any specific allegations from which the Court could plausibly infer that Defendants' conduct exceeded all possible bounds of decency.  As a result, Saintcy's IIED claim against Defendants in their individual capacity should be dismissed.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 32] be **GRANTED**.  Consequently, Saintcy's pending motions, *see* [DE 29, 33, 37], should be **DENIED AS MOOT**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Melissa Damian, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 23rd day of August 2024.



Jared M. Strauss
**United States Magistrate Judge**